| | |
|---|---|
| | UNITED STATES DISTRICT COURT |
| | EASTERN DISTRICT OF CALIFORNIA |
| CLAUDIA MACIAS,<br><br>Plaintiff<br><br>v.<br><br>LISA FILIPPINI; BILL MORONES; and BRIAN MILLER,<br>each in his/her individual capacity,<br><br>Defendants | CASE NO. 1:17-CV-1251 AWI EPG<br><br>ORDER ON MOTIONS TO DISMISS UNDER RULE 12(B)(6) FROM DEFENDANT MILLER AND FROM DEFENDANTS FILIPPINI AND MORONES<br><br>(Doc. No.'s 12, 13) |

Are allegations that school district officials "indefinitely banned" a parent from entering her child's elementary-school campus sufficient to state claims for free-speech retaliation and due-process infringement under 42 U.S.C. § 1983? In her first amended complaint ("1AC"), Plaintiff claims that by imposing the indefinite ban without a hearing, and in retaliation for her advocating for her son's educational needs, Defendants violated her First and Fourteenth Amendment rights. Defendants now move to dismiss each cause of action for failure to state a claim under which relief might be granted. For the reasons discussed below, the Court finds:

(I) In light of California law, an alleged "indefinite ban" from a school campus is unreasonable, even respecting the school's status as a non-public forum, and imposing such a ban indicates a retaliatory motive;

(II) California law provides a sufficiently concrete right allowing for parents to participate in their child's education, such that an alleged "indefinite ban" cannot be imposed without a hearing; and

(III) Qualified immunity cannot attach, as the language of state law makes the unlawfulness of Defendants' ban sufficiently obvious.

Defendants' motions will be denied.

## Background[1]

In August of 2015, Plaintiff enrolled her son M.S. in the fourth grade at Romero Elementary School (part of the Gustine Unified School District in Gustine, California). *See* 1AC. Shortly after classes began, M.S. began experiencing "heightened anxiety issues because of his teacher's treatment of him." *Id.* at ¶ 9. Plaintiff met with Defendants Lisa Filippini, Principal of Romero Elementary School, and Bill Morones, Gustine School District Superintendent, requesting M.S. be transferred to a different classroom. *Id.* at ¶¶ 11-12. The two school officials refused to order the transfer, but encouraged Plaintiff to observe M.S.'s classroom. *Id.* at ¶ 12. Thereafter, Plaintiff attempted to schedule an observation, but Principal Filippini responded with "shifting explanations of the school's parent-visitation policies." *Id.* at ¶ 13.

On September 18, 2015, Plaintiff and her husband arrived at the school for their appointment to observe in M.S.'s classroom, but were told by Principal Filippini "they could not visit the school without prior approval." *Id.* at ¶ 15. Principal Filippini accused Plaintiff of harassing the school's teachers, and told Plaintiff and her husband they could no longer come to the school. *Id.* at ¶ 14. Principal Filippini "refused to allow Plaintiff or her husband to tell their side of the events that occurred." *Id.* at ¶ 16. Sheriff's Deputy Brian Miller, the school resource officer, told Plaintiff that Principal Filippini "had the authority to ban her from the school," and said "he would arrest her if she ever returned to the school." *Id.* at ¶¶ 14, 17. Deputy Miller then escorted Plaintiff and her husband from school grounds. *Id.* at ¶ 18. Superintendent Morones "had knowledge of the ban, ratified the ban, did nothing to remedy the situation," "knew or should have known of Principal Filippini's wrongful and intentional conduct," and "banned Plaintiff consistent with the policy or custom of denying due process to parents." *Id.* at ¶ 22.

Plaintiff eventually transferred M.S. to a school in a different town and district because Defendants' actions "prevented her from participating in her son's education." *Id.* at ¶ 20.

///

///

---

[1] These facts derive from the 1AC, and are construed in the light most favorable to Plaintiff, the non-moving party. *Faulkner v. ADT Sec. Servs.*, 706 F.3d 1017, 1019 (9th Cir. 2013).

2

## *Legal Standard*

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's failure to state a claim upon which relief can be granted. A Rule 12(b)(6) dismissal may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. *Mollett v. Netflix, Inc.,* 795 F.3d 1062, 1065 (9th Cir. 2015).

In reviewing a complaint under Rule 12(b)(6), all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party. *Faulkner v. ADT Sec. Servs.*, 706 F.3d 1017, 1019 (9th Cir. 2013). To avoid a Rule 12(b)(6) dismissal, a complaint must also "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678; *Mollett*, 795 F.3d at 1065. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013) (quoting *Iqbal,* 556 U.S. at 678). "Plausibility" means "more than a sheer possibility," but less than a probability, and facts that are "merely consistent" with liability fall short of "plausibility." *Id*. This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The Ninth Circuit has distilled the following principles courts are to apply to Rule 12(b)(6) motions:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.
> Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014).

If a motion to dismiss is granted, "[the] district court should grant leave to amend, even if no request to amend the pleading was made," unless amendment would be futile or the plaintiff has failed to cure deficiencies despite repeated opportunities. *Garmon v. County of L.A.*, 828 F.3d 837, 842 (9th Cir. 2016).

*Analysis*

42 U.S.C. § 1983 provides a cause of action for the deprivation of "rights, privileges, or immunities secured by the Constitution or laws of the United States" against a person acting "under color of any statute, ordinance, regulation, custom, or usage." *Gomez v. Toledo*, 446 U.S. 635, 639 (1980); *Pittman v. Oregon, Employment Dep't*, 509 F.3d 1065, 1072 (9th Cir. 2007). "Section 1983 is not itself a source of substantive rights; rather it provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–394 (1989). Thus, to state a claim for relief under § 1983, the Plaintiffs must plead two essential elements: (1) that the Defendant acted under color of state law; and (2) that the Defendant caused them to be deprived of a right secured by the Constitution and laws of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Nurre v. Whitehead*, 580 F.3d 1087, 1092 (9th Cir. 2009).

"[I]f a [constitutional] violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established" at the time of the deprivation. *Blankenhorn v. City of Orange*, 485 F.3d 463, 480 (9th Cir. 2007). "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, 137 S. Ct. 548, 551 (2017). To be clearly established, the "[c]ontours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). This means the parties generally must identify a case where an officer acting under similar circumstances as the defendant officer was held to have violated the plaintiff's constitutional right. *Shafer v. County of Santa Barbara*, 868 F.3d 1110, 1117 (9th Cir. 2017) (citing *White*, 137 S. Ct. at 552). However, an exception to the 'case-on-point' rule exists for situations where the constitutional misconduct is "sufficiently obvious," such that the question is beyond debate. *Id*. at 1118, fn. 3. The salient question is whether, at the time of the encounter, "the state of the law ... gave [the officers] fair warning that their alleged treatment of [the plaintiff] was unconstitutional." *Blankenhorn*, 485 F.3d at 481. "The plaintiff bears the burden of proof that the right allegedly violated was clearly established[.]" *Tarabochia v. Adkins*, 766 F.3d 1115, 1125 (9th Cir. 2014).

## I. First Amendment Retaliation

Plaintiff's first cause of action alleges a claim of First Amendment retaliation against Principal Filippini and Deputy Miller. To establish such a claim, Plaintiff must have pleaded sufficient facts to show (1) she engaged in constitutionally protected activity, (2) the defendants' actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendants' conduct. *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006).

Defendants challenge Plaintiff's assertion that her actions leading up to the ban constitute protected speech.[2] Plaintiff has alleged that both she and her husband met and communicated multiple times with Principal Filippini in order to advocate for M.S.'s educational needs:

- "On or around August 2015, Plaintiff and her husband asked [] Principal Filippini to transfer their fourth-grade son to a different classroom at the School, and communicated their concerns about their son's assigned classroom and the manner in which his teacher treated him."
- "Plaintiff and her husband had meetings at the School with [] Principal Filippini and [] Superintendent Morones . . . ."
- "Principal Filippini offered Plaintiff and her husband shifting explanations of the School's policies regarding parent visitation."
- "On or around September 18, 2015, Principal Filippini indefinitely banned Plaintiff [] from the School and falsely accused her of harassing teachers."
- "Plaintiff [] and her husband had an appointment to visit their son's classroom on the day of the ban, but [Principal Filippini] said that they could not visit the School without prior approval . . . Principal Filippini said that Plaintiff could no longer come to the School."
- "[Deputy] Miller told Plaintiff that Principal Filippini had authority to ban her from the School and that he would arrest her if she ever returned to the School."

1AC, at ¶¶ 9-17. Through these allegations, Plaintiff maintains her "speech regarding Defendants' treatment of her son, including during school meetings, was protected speech." *Id.* at ¶¶ 26-27. The Court can reasonably infer from the above that Plaintiff was engaged in a speaking-related activity, such that her claim for a violation of her First Amendment rights against Principal

---

[2] Defendants also argue Plaintiff has failed to allege sufficient facts showing engagement in a protected activity because her allegation contained in ¶ 24 of her complaint is conclusory. ¶ 24 reads: "Defendants violated Plaintiff's First Amendment rights when they retaliated against Plaintiff by indefinitely banning her from the School, and committing other adverse acts, because Plaintiff engaged in protected speech by communicating concerns regarding her son's education." Defendants aver this statement fails to establish "with whom Plaintiff communicated or the nature of the communication." However, ¶ 23 of the complaint clearly re-alleges and incorporates by reference all prior paragraphs, wherein Plaintiff details her interactions with the Defendants prior to her removal from campus. Paragraphs 23 and 24 are not conclusory.

Filippini and Deputy Miller is plausible on its face. *See Pinard*, 467 F.3d at 768 (high-school athletes' petition and complaints to district officials requesting resignation of their coach constituted protected speech); *see also Davis v. Folsom Cordova Unified Sch. Dist.*, 2013 WL 268925, at *7 (E.D. Cal. Jan. 23, 2013) (finding father-plaintiff sufficiently pled engagement in a constitutionally-protected activity where he allegedly complained to and about school officials regarding their treatment of his daughter and other students) (citing *Jenkins v. Rock Hill Local Sch. Dist.*, 513 F.3d 580, 588 (6th Cir. 2008) (denying summary judgement where plaintiff-mother's complaints about school employees' alleged mistreatment of her child to superintendent was constitutionally protected speech); *C.T. v. Valley Stream Union Free Sch. Dist.*, 201 F. Supp. 3d 307, 316 (E.D.N.Y. 2016) (collecting cases, including *Pinard*, supporting a finding that a parental complaint to a school official was constitutionally-protected speech worthy of First Amendment protections).

Defendants contend that because of the school's status as a non-public forum, Principal Filippini had the authority to impose reasonable restrictions on Plaintiff's right to remain on campus. *See Hazelwood School Dist. v. Kuhlmeier*, 484 U.S. 260, 267 (1988) (holding that public schools do not possess the attributes of streets, parks, and other traditional public forums, and so speech in these "non-public fora" is subject to reasonable restrictions). Defendants argue that because Plaintiff displayed disruptive conduct on the day they escorted her from the premises, Principal Filippini acted lawfully and reasonably in escorting Plaintiff from the non-public forum, and therefore Plaintiff's speech cannot be considered constitutionally protected. Defendants' arguments are generally supported by both California law and Ninth Circuit precedent. *See* Cal. Penal Code § 626.4 ("The chief administrative officer of a campus . . . or a school, or an officer or employee designated . . . to maintain order on such campus or facility, may notify a person that consent to remain . . . has been withdrawn whenever there is reasonable cause to believe that such person has willfully disrupted the orderly operation of such campus or facility."); *Carey v. Brown*, 447 U.S. 455, 470-471 (1980) ("[N]o mandate in our Constitution leaves States and governmental units powerless to protect the public from the kind of boisterous and threatening conduct that disturbs the tranquility of . . . buildings that require peace and quiet to carry out their functions,

such as courts, libraries, schools, and hospitals . . . ."); *see also Jeglin By & Through Jeglin v. San Jacinto Unified Sch. Dist.*, 827 F. Supp. 1459, 1461 (C.D. Cal. 1993) ("[D]aily administration of public education is committed to school officials, [which] carries with it the inherent authority to prescribe and control conduct in the schools. School officials [need not] wait until disruption actually occurs before they may act to curtail exercise of the right of free speech, [and] have a duty to prevent the occurrence of disturbances."). The Court takes no issue with a school official's duty to generally manage the facilities on a day-to-day basis. However, this legal framework fails to align with the facts alleged in the 1AC for two reasons.

First, Defendants' contention requires the Court to find that Plaintiff "willfully disrupted the orderly operation" of the campus, so as to grant Principal Filippini the authority to remove Plaintiff from campus. *See* § 626.4(a). While Plaintiff's complaint does reference Principal Filippini's perspective that the teachers were being harassed by Plaintiff, *see* Plaintiff's 1AC, at ¶ 14, Plaintiff describes this as a false accusation; the 1AC contains no other allegations that can reasonably be viewed as indicating Plaintiff was being harassing or disruptive. Because the Court must view the facts in the light most favorable to Plaintiff, *Faulkner*, 706 F.3d at 1019, there is no basis to conclude that Plaintiff engaged in improper conduct in order for the non-public forum doctrine and § 626.4 to control.

Second, even if the Court infers Plaintiff's willful disruption, Plaintiff has not alleged retaliation merely because she was escorted from the school grounds on that day. Rather, she alleges that Principal Filippini told her she could *no longer come back* to the campus, and that Deputy Miller threatened her with arrest if she *ever* did. This "indefinite ban," as Plaintiff describes it, extends beyond reasonably "controlling conduct" in a non-public forum, and plausibly places the occurrence in the unreasonable realm of retaliatory action for engaging in protected speech. *Jacobson v. United States Dep't of Homeland Sec.*, 882 F.3d 878, 882 (9th Cir. 2018) ("In a nonpublic forum, restrictions on speech must only be reasonable in light of the purpose served by the forum . . . ."). Further, since Cal. Penal Code § 626.4 clearly instructs that "[i]n no case shall consent [to remain on campus] be withdrawn for longer than 14 days from the date upon which consent was initially withdrawn[,]" an "indefinite ban" from school campus is

7

patently unreasonable. *See Eagle Point Educ. Ass'n/SOBC/OEA v. Jackson Cty. Sch. Dist. No. 9*, 880 F.3d 1097, 1106 (9th Cir. 2018) (finding restriction on speech unreasonable where there was no evidence that the policies were actually needed to prevent disruption). Therefore, Plaintiff has sufficiently alleged that she engaged in protected speech for purposes of her First Amendment claim.

Defendants' motions do not appear to challenge the second and third elements of Plaintiff's retaliation claim;[3] the Court nevertheless finds the allegations made in the 1AC to be sufficient. Plaintiff asserts that being subjected to an indefinite ban would not only chill a parent of ordinary firmness from continuing his/her attempt to participate in the child's education, but goes further to state that she herself had to transfer M.S. to a different school because the ban "prevented her from participating in her son's education." 1AC, at ¶ 20. As for the third element, Plaintiff alleges Defendants "retaliated against Plaintiff by indefinitely banning her from the School . . . because Plaintiff engaged in protected speech by communicating concerns regarding her son's education." *Id*. at ¶ 24. For Principal Filippini, the complaint supports these allegations by describing the Principal's false accusations of Plaintiff's harassment of the teachers, her "shifting explanations of the School's policies regarding parent visitation," her refusal to allow Plaintiff to visit the classroom despite a scheduled appointment, her refusal "to allow Plaintiff or her husband to tell their side of the events," and her institution of an unreasonable ban. *Id*. at ¶¶ 13-16. For Deputy Miller, the facts supporting Plaintiff's claim include his presence and awareness of Plaintiff's advocacy at the September meeting, his unfounded advocacy for Principal Filippini by telling Plaintiff the Principal "had the authority to ban" Plaintiff indefinitely, and his imposition of an additional punitive measure—the threat of arrest—should Plaintiff return to the campus. *Id*. at ¶¶ 15, 17. *See Pinard v. Clatskanie Sch. Dist. 6J*, 2008 WL 410097, at *2 (D. Or.

---

[3] In Deputy Miller's motion to dismiss, he does vocalize a challenge to Plaintiff's complaint as to the second element, arguing Plaintiff has not alleged "the sort of adverse action that would deter the assertion of First Amendment rights." Deputy Miller then argues that since Plaintiff could be removed from campus for what Principal Filippini thought was improper behavior, Plaintiff's removal does not rise to the level of an "adverse action" on Defendants' part. However, Deputy Miller misses the mark in so arguing, as the Court is most concerned about Plaintiff's ban for a period longer than the prescribed 14 days under California Law. Simply, Plaintiff has not alleged Deputy Miller told her "she would be arrested if she came back within 14 days," but that the arrest would occur if she "ever" came back. Since the Court has found that this indefinite ban was unreasonable, Deputy Miller's argument refutes neither Plaintiff's assertions of protected speech, as resolved in Section I, supra, nor her argument that the indefinite ban was an adverse action.

8

Feb. 12, 2008) ("As with proof of motive in other contexts, this element of a First Amendment retaliation suit may be met with either direct or circumstantial evidence, and involves questions of fact that normally should be left for trial. The Ninth Circuit has identified at least three 'nonexclusive categories' of evidence that are probative of motive: '(1) proximity in time between the protected speech and the alleged retaliation; (2) the [defendants'] expressed opposition to the speech; and (3) other evidence that the reasons proffered by the [defendants] for the adverse [] action were false and pretextual.") (quoting *Ulrich v. City & County of San Francisco*, 308 F.3d 968, 979 (9th Cir. 2002)).

Defendants' motions to dismiss Plaintiff's claim of First Amendment retaliation are therefore denied.

## II. Denial of Procedural Due Process

Plaintiff's second cause of action alleges a procedural-due-process claim under the Fourteenth Amendment, against Principal Filippini, Superintendent Morones and Deputy Miller, for depriving her of "life, liberty, or property without due process of law." U.S. Const. Amend. XIV § 1. To make out a procedural due process claim, Plaintiff must plausibly allege: "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Franceschi v. Yee*, 887 F.3d 927, 935 (9th Cir. 2018), *see also Board of Regents v. Roth*, 408 U.S. 564, 569 (1972). "The essence of procedural due process is that' individuals whose property interests are at stake are entitled to 'notice and an opportunity to be heard.'" *Id.* (quoting *Dusenbery v. United States*, 534 U.S. 161, 167 (2002)). "Because due process is a flexible concept, '[p]recisely what procedures the Due Process Clause requires in any given case is a function of context.'" *Id.*

The core of Plaintiff's claim is that she has a constitutionally protected right to participate in her son's education, and this right was impinged when Defendants indefinitely banned her from school campus without first providing her with a hearing. Defendants maintain (A) Plaintiff has no constitutionally protected right; (B) Plaintiff failed to take advantage of an outlined statutory procedure; (C) Deputy Miller is not responsible for providing any hearing; and (D) Superintendent Morones took no part in any deprivation.

9

### A. *Constitutionally Protected Right*

Defendants challenge Plaintiff's contention that she has a constitutionally protected right. Plaintiff argues that specific provisions of California state law provide a right "to be on campus and to participate in her child's education," such that Defendants' decision to summarily ban Plaintiff from school grounds indefinitely (or acquiescence to this decision, in Superintendent Morones' case) deprived Plaintiff of a protected property interest.

"A protected property interest is present where an individual has a reasonable expectation of entitlement deriving from 'existing rules or understandings that stem from an independent source such as state law.'" *Wedges/Ledges of Cal., Inc. v. City of Phoenix*, 24 F.3d 56, 62 (9th Cir. 1994) (quoting *Roth*, 408 U.S. at 577). State law creates a reasonable expectation of entitlement giving rise to a protected property interest if it "imposes *significant* limitations on the discretion of the decision maker." *Braswell v. Shoreline Fire Dept.*, 622 F.3d 1099, 1107 (9th Cir. 2010) (emphasis added); *see also Ass'n of Orange Cnty. Deputy Sheriffs v. Gates*, 716 F.2d 733, 734 (9th Cir. 1983) ("A reasonable expectation of entitlement is determined largely by the language of the statute and the extent to which the entitlement is couched in mandatory terms."). "[A] statute will create an entitlement to a governmental benefit either if the statute sets out conditions under which the benefit must be granted or if the statute sets out the only conditions under which the benefit may be denied." *Allen v. Beverly Hills*, 911 F.2d 367, 370 (9th Cir. 1990) (citing *City of Santa Clara v. Andrus*, 572 F.2d 660, 676 (9th Cir. 1976)).

Plaintiff contends her property right derives from Cal. Educ. Code § 51101 and Cal. Penal Code § 626.4. Section 51101 states, in relevant part:

> [P]arents and guardians of pupils enrolled in public schools have the right and should have the opportunity . . . to be informed by the school, and to participate in the education of their children, as follows:
>
> (1) Within a reasonable period of time following making the request, to observe the classroom or classrooms in which their child is enrolled;
>
> (2) Within a reasonable time of their request, to meet with their child's teacher or teachers and the principal of the school in which their child is enrolled;

>                          \*\*\*
>
> (7) To have a school environment for their child that is safe and supportive of learning.
>
>                          \*\*\*
>
> (9) To be informed of their child's progress in school;
>
>                          \*\*\*
>
> (12) To be informed in advance about school rules, including disciplinary rules and procedures in accordance with Section 48980, attendance policies, dress codes, and procedures for visiting the school.

Further, Section 626.4, from which a school official derives the power to remove a person from school grounds for disruptive conduct, specifies that "[i]n no case shall consent [to remain on campus] be withdrawn for longer than 14 days from the date upon which consent was initially withdrawn."

On one hand, Sections 1, 2, 7, 9, and 12 of § 51101 each discuss Plaintiff's right to participate in M.S.'s education, and the first two even suggest a limited time period for school officials to comply with a parent's request. However, aside from these findings, the Court notes the statute offers little else in the way of mandatory language designed to control the decisions of school officials. *See Braswell*, 622 F.3d at 1102 (finding lack of protected due process property interest in continued employment where state law did not limit official's discretion to revoke licensure on which employment was contingent); *Punikaia v. Clark*, 720 F.2d 564, 566-67 (9th Cir. 1983) (finding no due process claim could lie where the operative statute gave the state "complete discretion" to close medical facility, despite superseded statute's explicit instructions on when, where, and how the state could move patients from the facility); *see also Jacobs, Visconsi & Jacobs Co. v. Lawrence,* 927 F.2d 1111, 1116 (10th Cir. 1991) ("[T]he state law's requirement that zoning decisions be reasonable . . . is insufficient to confer upon the applicant a legitimate claim of entitlement."); *Prime Healthcare Services, Inc. v. Harris*, 216 F.Supp.3d 1096, 1114-15 (S.D. Cal. 2016) (finding hospital did not have property interest in acquiring five nonprofit hospitals, where California statutes and implementing regulations conferred upon state attorney general complete discretion to deny, consent to, or conditionally approve transaction). Further, the

11

Court notes the lack of on-point case law, state or federal, interpreting the statute. *Cf. Camfield v. Bd. of Trustees of Redondo Beach Unified Sch. Dist.*, 2016 WL 7046594, at *4 (C.D. Cal. Dec. 2, 2016) (dismissing the plaintiff's complaint for employment discrimination under § 51101, holding the section did not impose legal duties so as to give rise to an action in tort, and described this section as "merely stating a policy."); *with* 87 Cal. Op. Att'y Gen. 168 (2004) (wherein the California Attorney General expressed its official opinion on the rights and responsibilities of a school board in restricting student rights, referring to § 51101 as a source of rights to be weighed against other rights conferred by California law). The Court leaves unsettled whether § 51101, standing alone, imposes "significant limitations" on school-district officials' discretion.

However, the Court finds Cal. Penal Code § 626.4 significantly limiting. This statute not only provides school officials with the power to remove bad actors from campus, but also *explicitly limits* to fourteen days the amount of time such a ban can stay in effect: "In no case ***shall*** consent be withdrawn *for longer than 14 days* from the date upon which consent was initially withdrawn." (emphasis added). Here, the complaint alleges that Principal Filippini told Plaintiff she *could no longer come to the school*. 1AC at ¶ 14. Additionally, Deputy Miller allegedly told Plaintiff that Principal Filippini "had the authority to ban her from the school," and that "he would arrest her if she *ever* returned to the school." *Id*. at ¶¶ 14, 17. A ban in excess of 14 days imposes significant limitations on school officials' discretion to restrict a parent from the campus, and provides context for § 51101's grant of rights "within a reasonable time" to observe a classroom or meet with the teacher or principal. Plaintiff therefore has alleged a protected property interest on which to base her claim for a due process violation. *See Braswell*, 622 F.3d at 1107; *see also Kaiser Foundation Health Plan, Inc. v. Burwell*, 147 F.Supp.3d 897 (N.D. Cal. 2015) ("Whether an expectation of entitlement is sufficient to create a property interest will depend largely upon the extent to which the statute contains mandatory language that restricts the discretion of the decisionmaker.") (quoting *Allen*, 911 F.2d at 370); *Burch v. Smathers*, 990 F.Supp.2d 1063, 1072 (D. Id. 2014) ("Critically, this provision does not say "a special use permit ***shall*** be granted"; rather, operative word "may" clearly indicates the Council has discretion to grant or deny a permit even if all other listed conditions are satisfied.") (emphasis added).

12

Further, Plaintiff's indefinite ban cannot be seen as *de minimis*, as Deputy Miller contends, as case law defines *de minimis* under the Constitution. *See Goss v. Lopez*, 419 U.S. 565 (1975) (holding a ten-day suspension of students without a hearing implicated due process concerns); *cf. Laney v. Farley*, 501 F.3d 577, 584 (6th Cir. 2007) (finding a one day in-school suspension to be a *de minimis* deprivation not implicating due process). Even if this common-law guidance was not available, the California legislature has decided that a school may not ban a parent from campus for longer than 14 days. Paired with a parent's right to "observe the classroom or classrooms in which their child is enrolled" and "to meet with their child's teacher or teachers and the principal of the school in which their child is enrolled,"—which cannot be done "by phone, letter, or email" as Defendant contends—this two week time period provides additional context for the proposition that a parent may not be banned indefinitely from campus without adequate procedures. *See* Cal. Educ. Code § 51101, Cal. Penal Code § 626.4.

### B. Denial of Adequate Procedural Protections

Deputy Miller contends that no due process claim should lie because Plaintiff failed to "request administrative review of her removal from school" under the procedures outlined in the statute—§ 626.4(c). Plaintiff contends otherwise.

Insomuch as Plaintiff has alleged a right to a hearing prior to being escorted from campus, the Court finds little merit in this argument. School officials are obliged to "maintain order" on campus, and may withdraw consent to remain "whenever there is reasonable cause to believe that such person has willfully disrupted the orderly operation of such campus or facility." Cal. Penal Code § 626.4. "[I]t is well-settled that protection of the public interest can justify an immediate [deprivation] of property without a prior hearing." *Soranno's Gasco v. Morgan*, 874 F.2d 1310, 1317 (9th Cir. 1989); *see also Recchia v. LA Animal Svcs*, 2018 U.S. App. LEXIS 11364 (9th Cir. 2018) (finding, *inter alia*, police officers did not violate the plaintiff's procedural due process rights by seizing his birds without a pre-seizure hearing because state law provided for adequate process); *Jeglin By & Through Jeglin,* 827 F. Supp. at 1461 (C.D. Cal. 1993) ("[D]aily administration of public education is committed to school officials, [who need not] wait until disruption actually occurs [and who] have a duty to prevent the occurrence of disturbances.").

13

However, Plaintiff's claim appears to hinge on the fact that she was banned indefinitely, *i.e.* beyond the two-week statutory period expressed in § 626.4, and as such alleges a due process violation *post-deprivation*. "The base requirement of the Due Process Clause is that a person deprived of property be given an opportunity to be heard at a meaningful time and in a meaningful manner." *Yagman v. Garcetti*, 852 F.3d 859, 863 (9th Cir. 2017). "[P]rocedural due process does not require that the notice and opportunity to be heard occur before the deprivation[, but] can take place through a combination of pre- and post-deprivation procedures, or be satisfied with post-deprivation process alone. *Buckingham v. Sec'y of the USDA*, 603 F.3d 1073, 1082 (9th Cir. 2010) (citations omitted). This does not always require a full evidentiary hearing or a formal hearing, but does require "*some kind* of hearing before the State deprives a person of liberty or property." *Id*. at 864 (emphasis in original) (citing *Shinault v. Hawks*, 782 F.3d 1053, 1058 (9th Cir. 2015) and *Zinermon v. Burch*, 494 U.S. 113, 127 (1990)).

Here, Principal Filippini allegedly told Plaintiff she could no longer come to the school, and Deputy Miller told her she would be arrested if she ever returned. While § 626.4 states the procedure through which a temporarily-banned individual may request a hearing from school district officials, the scheme specifically applies to those who wish to return to campus sooner than two weeks. Therefore, despite Deputy Miller's contention that Plaintiff failed to follow § 626.4, any right to a hearing under this statute would have come to a close after two weeks. As pleaded, Plaintiff was not provided with an opportunity to challenge the ban after two weeks had passed, but instead was faced with the threat of arrest if she *ever* returned to campus. These allegations sufficiently state a procedural due process violation. *Cf. Recchia*, 2018 U.S. App. LEXIS 11364 at *16-17 (summary judgment in favor of police officers on plaintiff's procedural due process claim was appropriate where the officers were not involved in the decision, made by the county veterinarian in the absence of a hearing, to euthanize the plaintiff's birds); *Emerald Outdoor Advertising L.L.C. v. City of Portland*, 1999 U.S. Dist. LEXIS 20912, *17 (D. Or. Nov. 1, 1999) (finding plaintiff was not provided with adequate due process where the defendant city had no provision for a full and meaningful hearing on the suspension of plaintiff's permit, and never provided the plaintiff the opportunity to pursue any remedy).

14

### C. *Active Participation of Deputy Miller*

Deputy Miller contends he should not be liable for any violation of Plaintiff's due process rights because it is the school district, and not he, who would provide Plaintiff with a hearing. Plaintiff counters that the Deputy did indeed infringe upon her due process right when he enforced Principal Filippini's institution of the ban, as well as when he imposed the additional punitive measure—the threat of arrest—should Plaintiff "ever" return to the campus. As such, Plaintiff contends that even though Deputy Miller himself would not be expected to provide a hearing, he was acting as a member of the school staff—i.e. acting under color of law—when he deprived her of her right to return to campus so that she could participate in her son's education.

"A person subjects another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Preschooler II v. Clark County Sch. Bd. of Trustees*, 479 F.3d 1175, 1183 (9th Cir. 2007). As such, an officer who is merely a bystander to his colleagues' conduct cannot be found to have caused any injury. *Hopkins v. Bonvicino*, 573 F.3d 752, 770 (9th Cir. 2009); *Blankenhorn,* 485 F.3d at 485 n.12 ("For example, an officer who arrives at the scene after the unconstitutional act is completed, or an officer who provides crowd control at the scene, are not integral participants."); *Chuman v. Wright*, 76 F.3d 292, 295 (9th Cir. 1996) ("[T]he integral participant rule only absolves teammates of liability where they "had no role in the unlawful conduct."). Instead, a plaintiff must "establish the integral participation of the officers in the alleged constitutional violation." *Jones v. Williams*, 297 F.3d 930, 935 (9th Cir. 2002). Integral participation requires some fundamental involvement in the conduct that allegedly caused the violation. *Blankenhorn,* 485 F.3d at 481 (finding the officer who helped handcuff the plaintiff while the plaintiff was lying on the ground to be an "integral participant" in the alleged Constitutional violation, because the officer's "help in handcuffing [the plaintiff] was instrumental in the officers' gaining control of [the plaintiff], which culminated in [another officer's] application of hobble restraints."); *see also Willis v. Mullins,* 2017 U.S. Dist. LEXIS 181238, at *24 (E.D. Cal. Nov. 1, 2017) ("Officers are fundamentally involved in the alleged violation when they provide some affirmative physical support at the scene

15

of the alleged violation and when they are aware of the plan to commit the alleged violation or have reason to know of such a plan, but do not object.") (quoting *Monteilh v. Cty. of L.A.*, 820 F. Supp. 2d 1081, 1089 (C.D. Cal. 2011)).

Here, Plaintiff has sufficiently alleged Deputy Miller actively participated in Principal Filippini's institution of Plaintiff's indefinite ban from campus. The complaint states that Deputy Miller was present during the September 2015 meeting, reaffirmed Principal Filippini's authority to institute an indefinite ban, and threatened arrest if she "ever" returned to campus. These acts, coupled with his extensive training as a school resource officer,[4] is enough for the Court to infer the Detective was aware of Cal. Penal Code § 626.4 (providing for a ban up to 14 days) and to find he actively participated in Plaintiff's deprivation. *See Keates v. Koile*, 883 F.3d 1228, 1242 (9th Cir. 2018) (finding as plausible the plaintiff's allegations that employees of child protective services integrally participated in primary state actor's violation of constitutional rights where employees participated in deprivation and collaborated with primary state actor to those ends); *see also Campbell v. Santa Cruz,* 2016 U.S. Dist. LEXIS 160530 at *18-19 (N.D. Cal. Nov. 18, 2016) (finding deputy's actions were "integral" because they constituted "some fundamental involvement" in the conduct that caused the alleged violation, where deputy was ordered to backup and observe other police officers' interactions with plaintiff); *Hopkins*, 573 F.3d at 770 (granting qualified immunity to an officer who did not participate in conversation between other officers where the latter decided to unconstitutionally enter a residence); *Monteilh*, 820 F. Supp. 2d at 1090 (finding no integral participation where police officers did not know or have reason to know that social worker was depriving the plaintiff of her constitutional rights). It follows that it is immaterial whether Deputy Miller would have been the one responsible for providing the hearing. *See Spitzer v. Aljoe*, 2015 U.S. Dist. LEXIS 45471 at *35-36 (N.D. Cal. Apr. 6, 2015) (finding an officer who integrally participated in acts violating plaintiff's procedural due process rights to be liable, where the officer did not seize plaintiff's vehicle but refused to release it after impoundment).

---

[4] *See* Cal. Penal Code § 832.3(g)-(h), 11 C.C.R. § 1005(a)(5), and 11 C.C.R. § 1081(a) for a full panoply of the duties and responsibilities of school resource officers.

16

### D. *Supervisory Liability of Superintendent Morones*

Superintendent Morones contends Plaintiff has only alleged conclusory allegations against him, concerning whether he knew or should have known of the alleged procedural violations and failed to remedy this. Plaintiff maintains, *inter alia*, that the allegations contained in the complaint are in fact sufficient at this point in the litigation.

Supervisory liability is imposed against a supervisory official in his individual capacity (1) for his own culpable action or inaction in the training, supervision, or control of his subordinates, (2) for his acquiescence in the constitutional deprivations of which the complaint is made, or (3) for conduct that showed a reckless or callous indifference to the rights of others. *Preschooler II*, 479 F.3d at 1183 (quoting *Menotti v. City of Seattle*, 409 F.3d 1113, 1149 (9th Cir. 2005)). Concerning acquiescence, "a supervisor is liable for the acts of his subordinates 'if the supervisor participated in or directed the violations, or knew of the violations of subordinates and failed to act to prevent them.'" *Id.* at 1182 (quoting *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989)). At a minimum, Plaintiff must allege a "factual basis for imputing . . . knowledge" of subordinates' unconstitutional practices as well as culpable action or inaction. *Chavez v. United States*, 683 F.3d 1102, 1111 (9th Cir. 2012).

In the Complaint, Plaintiff alleges that at the beginning of the school year, Superintendent Morones attended a meeting concerning M.S.'s classroom assignment; there, Plaintiff first raised her concerns at the teacher's treatment of her son. 1AC, at ¶ 12. Plaintiff also asserts:

> Defendant Superintendent had knowledge of the ban, ratified the ban, and did nothing to remedy the situation. Superintendent Morones knew, or should have known, of Principal Filippini's wrongful and intentional conduct in violation of Plaintiff's rights. Superintendent Morones banned Plaintiff consistent with the policy or custom of denying due process to parents.

*Id.* at ¶ 22. At no other point does the operative complaint mention the Superintendent.

Plaintiff has sufficiently alleged that Morones knew of the indefinite ban—after it was instituted by Principal Filippini in September 2015—and "did nothing to remedy the situation." The Court can infer Morones's knowledge from the factual allegation that he attended a meeting with Plaintiff just weeks earlier concerning M.S.'s classroom assignment. *OSU Student All. v.*

17

*Ray*, 699 F.3d 1053, 1077 (9th Cir. 2012) (finding as significant, for imputing the plausibility of a defendant-supervisor's knowledge, the involvement of the supervisor in the day-to-day activities of the subordinate's activities). This imputed knowledge, Morones's supervisory position, and his attendance at one of the meetings allows for a plausible claim of acquiescence at this point in the litigation. *Preschooler II*, 479 F.3d at 1182 ("At this early stage of the proceedings, [plaintiff] does not need to show with great specificity how each defendant contributed to the violation of his constitutional rights. Rather, he must state the allegations generally so as to provide notice to the defendants and alert the court as to what conduct violated clearly established law.").

### III. Qualified Immunity for Retaliation Claim

Finally, Defendants claim that qualified immunity should attach to any liability on Plaintiff's claims. Defendants each generally argue that the contours of Plaintiff's right were not sufficiently clear in the fall of 2015 "such that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640.

Defendants contend their removal of Plaintiff from their non-public forum was arguably reasonable, and so no First Amendment violation has occurred. *See Wysocki v. Crump*, 838 F. Supp. 2d 763, 768 (C.D. Ill. 2011) (granting qualified immunity where law was not clearly established such that a reasonable school principal would have known that a parent's communication with a school principal about a private matter would be entitled to First Amendment protection). Defendants argue Plaintiff's cases supporting her claim each concerned plaintiffs who communicated with officials outside of the respective schools, whereas here Plaintiff was merely complaining to the Principal when she was ejected from campus. *See Jenkins*, 513 F.3d at 584 (finding retaliation where the plaintiff-parent wrote a letter to the local newspaper and filed a complaint with the U.S. Department of Education); *Davis*, 2013 WL 268925, at *1-3 (finding retaliation where the plaintiff-parent complained to multiple District officials and filed a Title IX complaint with the Department of Education). The Court finds Defendants' attempt to distinguish Plaintiff's cases unavailing, as multiple circuits, including the Ninth, have rejected the idea that a plaintiff's advocacy needs to reach into matters of public concern. *See Pinard*, 467 F.3d at 766 ("Although [the] personal matter/public concern distinction

18

is the appropriate mechanism for determining the parameters of a public employer's need to regulate the workplace, neither we, the Supreme Court[,] nor any other federal court of appeals has held such a distinction applicable in student speech cases, and we decline to do so here."). Instead, Ninth Circuit precedent instructs the Court frame the issue as follows:

> Retaliation for engaging in protected speech has long been prohibited by the First Amendment. We have previously made it clear that there is a right to be free from retaliation even if a non-retaliatory justification exists for the defendants' action.

*O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016).

Further, while the Court agrees with Defendants that qualified immunity "provides ample protection to all but . . . those who knowingly violate the law," *Malley v. Briggs*, 475 U.S. 335, 341 (1986), ultimately the Court finds this passage supportive of Plaintiff's claims (as alleged in her complaint). Simply, Defendants contend they banned Plaintiff from the school campus pursuant to their authority under California state law, which allows for an ejection upon "reasonable cause to believe that such person has willfully disrupted the orderly operation of such campus or facility." Cal. Penal Code § 626.4. However, this same paragraph explicitly grants the authority for a ban of up to 14 days, and no longer. *Id*. Principal Filippini's statement that Plaintiff "could no longer come to the school," and Deputy Miller's statement that "he would arrest [Plaintiff] if she ever returned to the school," along with their reliance on § 626.4 to remove Plaintiff from campus that September day, adequately demonstrates their knowledge of the statute containing the 14-day provision. As stated above, the law is clear that restrictions on speech in a non-public forum must be reasonable, and any bad actor can only be summarily removed for up to 14 days; Defendants' "indefinite ban" does not comport with these principles.[5] *See Tucker v. State of Cal. Dep't of Educ.*, 97 F.3d 1204, 1216 (9th Cir. 1996) ("The government need not choose the least restrictive alternative when regulating speech in a nonpublic forum . . . [h]owever, its failure to select simple available alternatives suggests that the ban it has enacted is not reasonable.").

---

[5] Deputy Miller also contends the definition of "indefinite" does not mean forever, but simply means "not precise, vague" and "having no exact limits." The focus of the Court's analysis, however, is not on Plaintiff's characterization of the ban as "indefinite," but on the specific statements made by Principal Filippini ("*no longer come to the school*") and Miller ("arrested if she *ever* came back").

19

Therefore, even accepting *arguendo* that Defendants had reasonable cause to eject Plaintiff on that day in September, it should have been plainly obvious to Defendants that Plaintiff could not be barred from campus indefinitely. *Keates*, 883 F.3d at 1235 ("When properly applied, qualified immunity protects all but . . . those who knowingly violate the law.").[6]

## **CONCLUSION**

An indefinite ban from school campus is not a reasonable restriction on speech, and instituting such a ban without providing a hearing implicates procedural due process concerns. Plaintiff has pleaded sufficient facts for the Court to infer that Defendants were aware their conduct did not comport with the explicit commands of state and federal law. Thus, the motions to dismiss Plaintiff's First and Fourteenth Amendment claims, brought by Principal Filippini, Superintendent Morones and Deputy Miller, will be denied.

## **ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' Motions to Dismiss (Doc. No.'s 12 and 13) are DENIED; and
2. The case is referred back to the Magistrate Judge for further proceedings.

IT IS SO ORDERED.

Dated:   May 17, 2018                              _____
                                                                    SENIOR DISTRICT JUDGE

---

[6] The reasoning is based upon the pleadings—read in a light most favorable to Plaintiff—that she was "indefinitely banned" from the school campus, *Faulkner.*, 706 F.3d at 1019. This finding does not preclude Defendants from re-raising the qualified immunity issue at a later point, if the evidence demonstrates otherwise.